IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MAHALAXMI AMBA JEWELERS, et al.,

        Plaintiffs,

v.                                        Case No. 14-2321-JTM

JEH JOHNSON, et al.,

        Defendants.

## MEMORANDUM AND ORDER

Plaintiffs Mahalaxmi Amba Jewelers ("Mahalaxmi"), Karats, Inc., and Akshay Anand seek review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., of a United States Citizenship and Immigration Services ("USCIS") decision denying Akshay Anand's I-140 immigrant visa petition. The issue before the court is whether USCIS arbitrarily or capriciously determined that Karats is not an affiliate of the Indian partnership Mahalaxmi. As discussed below, USCIS's decision is affirmed.

### I. Background

Mahalaxmi is a family-owned jewelry business in Delhi, India, operating as a partnership under the laws of India. According to Mahalaxmi's partnership deed filed in India in 2006, it has four partners: Shammi Anand, the eldest partner; Vijay Anand; Sanjiv Anand; and Akshay Anand, Mahalaxmi's newest partner and son of Shammi Anand. Under the terms of the partnership deed, all of Mahalaxmi's decisions are to be made by the mutual consent of all four partners. Ownership of

Mahalaxmi is as follows: Sanjiv owns 33.3%; Vijay owns 33.3%; Shammi owns 16.7%; and Akshay owns 16.7%. Akshay does not draw income from his partnership in Mahalaxmi, but does collect interest on his share of the firm's capital account. Shammi, Sanjiv, and Vijay conduct Mahalaxmi's day-to-day affairs in India.

Karats is a jewelry store located in Overland Park, Kansas. It is a Kansas corporation owned by Shammi, Sanjiv, Vijay, and Akshay. Karats has issued 738,000 shares of common stock apportioned as follows: Shammi holds 151,500 shares, Sanjiv holds 12,000 shares, Vijay holds 12,000 shares, and Akshay holds 562,500 shares. Common stock receives one vote per share. Karats has also issued 12,000 shares of Class A stock at 70 votes per share, all of which are held by Shammi. Thus, Shammi holds 21.8% of all Karats shares; Akshay holds 75%, and Sanjiv and Vijay each hold 1.6% of Karats' shares.

In December 2006, Akshay received an L-1A non-immigrant visa to work at Karats. He received extension on his L-1A visa in 2007, 2008, 2009, and 2010.

In 2009, Karats filed its first I-140 immigrant petition seeking to classify Akshay as a multinational executive or manager. USCIS denied the petition on grounds that (1) Karats failed to establish a qualifying relationship between Mahalaxmi and Karats under 8 C.F.R. §§ 204.5(j)(2), (j)(3)(i)(C); (2) Karats did not establish that Akshay had the required one year of qualifying managerial experience at Mahalaxmi under 8 C.F.R. § 204.5(j)(3)(i)(B); and (3) Karats failed to establish that Akshay's current duties were in a managerial capacity as required by 8 C.F.R. § 204.5(j)(2)(C).

In 2011, Karats filed a second I-140 petition seeking to classify Akshay as a multinational executive or manager. USCIS denied the petition on the grounds that: (1) Karats failed to establish a qualifying relationship between Karats and Mahalaxmi under 8 C.F.R. §§ 204.5(j)(2), (j)(3)(i)(C); and (2) Karats did not establish that Akshay had the required one year of qualifying managerial experience at Mahalaxmi under 8 C.F.R. § 204.5(j)(3)(i)(B).

On May 23, 2012, Karats filed a third I-140 petition seeking to classify Akshay as a multinational executive or manager, which is the petition at issue in this appeal. On November 18, 2013, USCIS sent Karats a Request for Evidence ("RFE"), asking Karats to (1) submit documentation of a qualifying relationship between Mahalaxmi and Karats; (2) submit documentation that Akshay had the required one year of qualifying managerial experience at the foreign entity, Mahalaxmi; and (3) establish that Akshay's current duties at Karats were in an executive or managerial capacity as required by 8 C.F.R. § 204.5(j)(2). Karats responded and USCIS denied the petition, citing a failure to establish a qualifying relationship between Karats and Mahalaxmi.

On April 18, 2014, USCIS agreed to re-open the November 2013 denial and sent Karats another RFE seeking evidence of a qualifying relationship between Mahalaxmi and Karats. This RFE specifically noted a lack of evidence that Karats is an affiliate of Mahalaxmi, and Karats responded. USCIS denied the petition again on June 20, 2014, finding that Karats failed to establish a qualifying relationship between the foreign entity, Mahalaxmi, and Karats as required by 8

3

C.F.R. §§ 204.5(j)(2), (j)(3)(i)(C); that is, that Karats failed to establish that it is an "affiliate" of Mahalaxmi.

## II. Standard of Review

Agency decisions may be reviewed in federal District Court. *See* 5 U.S.C. § 702. The reviewing court shall set aside an agency finding that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court applying an "arbitrary and capricious" standard of review under the APA must "ascertain whether the agency examined the relevant data & articulated a rational connection between the facts found and the decision made." *Kobach v. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (quotation and citation omitted).

## III. Analysis

Congress has allotted a discrete number of employment-based immigration visas to issue, calculated from a base level of 140,000 visas annually. 8 U.S.C. § 1151(d). Of those employment-based visas, no more than 28.6 percent shall issue to a category of immigrants defined as "priority workers." 8 U.S.C. § 1153(b)(1). "Priority worker" visas are available to three categories of immigrants: (1) those with extraordinary ability, (2) "[o]utstanding professors and researchers," and (3) "[c]ertain multinational executives and managers." *Id.* Here, plaintiffs filed for a "multinational executives and managers" visa for Akshay. Such visas require that the alien be employed for at least 1 of the 3 years preceding the application and "seeks to enter the United State in order to continue to render services to the same

4

employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C). The issue in this appeal is whether Karats is an "affiliate" of Mahalaxmi.

### A. USCIS's determination that Karats is not an affiliate of Mahalaxmi was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

For purposes of 8 U.S.C. § 1153(b)(1)(C), an "affiliate" includes "(A) [o]ne of two subsidiaries both of which are owned and controlled by the same parent or individual" or "(B) [o]ne of two legal entities owned and controlled by the same group of individuals, each individual owning and controlling approximately the same share or proportion of each entity." 8 C.F.R. § 204.5(j)(2). Under § 1153(b)(1)(C), "control" may be *de jure* by reason of ownership of 51% of outstanding shares or *de facto* by reason of control of voting shares. *Matter of Hughes*, 18 I&N Dec. 289 (BIA 1982).

Here, USCIS found that plaintiffs did not prove that Karats is an affiliate of Mahalaxmi. It found that Shammi had *de facto* control of Karats by virtue of his majority voting shares, but that plaintiffs failed to show that he also controls Mahalaxmi. (Dkt. 12-2, at 2-3). USCIS determined that the Mahalaxmi partnership deed specifies that the "financial and operational decisions of Mahalaxmi are made by mutual consent of the partners." *Id.* at 3. It further determined that (1) the February 2012 statement of Shammi, Sanjiv, and Vijay did not amend the partnership deed to cede control to Shammi because Akshay did not sign it as required by the deed, and (2) the February 2012 statement was insufficient to demonstrate an amendment by "course of dealing" if the Indian Partnership Act

5

allows such amendment. (Dkt. 12-2, at 2-3). USCIS thus found that the partners control Mahalaxmi equally, that Shammi has *de facto* control of Karats, and that Karats is therefore not an affiliate of Mahalaxmi for want of common control. *Id.*

USCIS's decision is thus not arbitrary or capricious; it articulates a rational connection between the facts of record and its decision that the two entities are not controlled in approximately the same proportions by the same people.

Further, the decision is not an abuse of discretion or contrary to law. Karats issued a total of 738,000 shares of Common Stock at 1 vote per share, and 12,000 shares of Class A stock at 70 votes per share. (Dkt. 13-1, at 20-22). Karats issued Shammi 151,500 shares of Common Stock and all 12,000 shares of Class A stock for a total of 1,003,500 of 1,590,000 total votes by Karats shareholders. *Id.* Shammi thus had *de facto* control of Karats.

Mahalaxmi's partnership agreement specifies that operational and management decisions shall be made by the mutual consent of all four partners. (Dkt. 13-1, at 12-14). In February 2012, Shammi, Sanjiv, and Vijay signed a statement declaring that Shammi's decisions are "final and binding on the others in Mahalaxmi."[1] (Dkt. 13-1, at 19). Akshay did not sign the February 2012 statement; therefore, it cannot be an express amendment to the partnership deed, which requires mutual agreement of all partners, including Akshay.

---

[1] Notably, the February 2012 statement also declares that "all business decisions" of both Karats and Mahalaxmi are "collective decisions and are taken jointly by all the partners." (Dkt. 13-1, at 19). This statement cuts against plaintiffs' argument that USCIS errantly found that Shammi does not control Mahalaxmi.

The rights of Mahalaxmi's partners under the laws of India "may be determined by contract between the partners," which may be either express or implied by a course of dealing. The Indian Partnership Act § 11(1), No. 9 of 1932, INDIA CODE (2015). The partnership agreement may be modified by the consent of all partners, which also may be express or implied by course of dealing. *Id.*[2]

USCIS determined that, even if the Indian Partnership Act allows modification of a partnership agreement by course of dealing, the February 2012 statement does not provide sufficient evidence to establish such course of dealing. USCIS noted that it had requested more evidence of such course of dealing and did not receive any. (Dkt. 13-1, at 3). Absent sufficient evidence of a course of dealing modifying the partnership deed to provide Shammi control over Mahalaxmi, the evidence demonstrates that Shammi controls Karats, but that all four partners control Mahalaxmi equally. Thus, it was reasonable to determine that the entities are not "controlled by the same group of individuals" with each individual "controlling approximately the same share or proportion of each entity." 8 C.F.R. § 204.5(j)(2).

Accordingly, USCIS's decision to deny Akshay's I-140 petition of May 23, 2012, was not arbitrary, capricious, an abuse of discretion, or contrary to law.

---

[2] The full text of the India Partnership Act § 11(1) reads:

> Subject to the provisions of this Act, the mutual right and duties of the partners of a firm may be determined by contract between the partners, and such contract may be express or may be implied by a course of dealing.
>
> Such contract may be varied by consent of all the partners, and such consent may be express or may be implied by a course of dealing.

7

Rather, it was based on a rational analysis of facts applied to appropriate legal standards, concluding that plaintiffs did not prove the common control necessary to establish that Karats is an affiliate of Mahalaxmi for purposes of an I-140 executive or manager visa.

### B. Estoppel does not compel reversal of USCIS's decision.

Plaintiffs argue that USCIS's prior approval of Akshay's L-1 visa compels approval of his EB-1 application by principles of equitable or promissory estoppel.

#### 1. Equitable Estoppel

"Equitable estoppel allows one party to prevent another from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage." *Kowalczyk v. I.N.S.*, 245 F.3d 1143, 1149 (10th Cir. 2011). Equitable estoppel lies against a private party where: (1) the party to be estopped knows the facts; (2) the party to be estopped intends its conduct to be acted upon, or for the party asserting estoppel to act such that "the party asserting estoppel has the right to believe that it was so intended"; (3) the party asserting estoppel is "ignorant of the true facts"; and (4) the party asserting estoppel "on the other party's conduct to his injury." *Penny v. Guiffrida*, 897 F.2d 1543, 1545-46 (10th Cir. 1990). Equitable estoppel against the government requires a showing of some "'affirmative misconduct'" and has a "particularly high bar" in the context of immigration. *Kowalczyk*, 245 F.3d at 1149 (quoting *I.N.S. v. Hibi*, 414 U.S. 5, 8 (1973)).

Plaintiffs argue that USCIS engaged in misconduct by indicating that it would request documentation in areas that it believed lacked evidence regarding the I-140 petition, but then denied on grounds on which it did not request evidence. The court is unpersuaded that USCIS engaged in such "affirmative misconduct."

To the contrary, USCIS notified plaintiffs in its final RFE, dated April 18, 2014, that plaintiffs had failed to demonstrate that Karats was an affiliate of Mahalaxmi. (Dkt. 12-4). USCIS requested additional evidence regarding the control of Mahalaxmi and explained that Shammi was in *de facto* control of Karats, but the evidence presented indicated that all four partners controlled Mahalaxmi equally. *Id.* Accordingly, USCIS denied on the very grounds for which it requested additional evidence from plaintiffs.[3]

### 2. Promissory Estoppel

Plaintiffs also argue that promissory estoppel compels reversal here. Promissory estoppel is typically a quasi-contract claim to enforce a promise without consideration. 4 WILLISTON ON CONTRACTS § 8:6 (4th ed.). The action requires (1) a promise, (2) action or forbearance taken by the promisee in reasonable reliance on the promise to his detriment, and (3) that the action is necessary to avoid injustice. *See id.*; RESTATEMENT (SECOND) OF CONTRACTS § 90.

---

[3] Plaintiffs further argue that estoppel is appropriate because Akshay was previously approved for L-1 visas. However, USCIS need not "approve applications or petitions where eligibility has not been demonstrated, merely because of prior approvals which may have been erroneous." *Matter of Church of Scientology Int'l*, 19 I. & N. Dec. 593, 597 (B.I.A. 1988). Further, the L-1 visas are non-immigrant, and the EB-1 visa is an immigrant visa which, although articulating a similar standard, is under separate statutory control and allotment standards.

9

Plaintiffs argue that USCIS's "representation" in a prior stipulation, in a prior litigation, regarding a prior I-140 petition is a promise that USCIS would request any evidence it found lacking. (Dkt. 24, at 22). Even if the prior stipulation could be construed as a promise, plaintiffs did not take action or forebear in reliance on that promise to their detriment regarding the third I-140 petition now at issue. Rather, as discussed above, USCIS specified in its final RFE that it needed more evidence of common control of the two entities. It then denied the petition for want of the evidence it had expressly requested. Therefore, plaintiffs cannot prove that they changed position or failed to provide evidence of control over Mahalaxmi to their detriment in reliance on a USCIS promise because USCIS *did* request such evidence. A promissory estoppel action cannot stand unless the promisor fails to make good on the promise. Plaintiffs' promissory estoppel argument fails.

Moreover, plaintiffs fail to show affirmative misconduct under either theory and thus cannot overcome the "high bar" to estoppel actions against the government.

IT IS ACCORDINGLY ORDERED this 8th day of September, 2015, that USCIS's decision is AFFIRMED .

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE